IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
BRUNSWICK DIVISION

FILED
U.S. DISTRICT COURT
BRUNSWICK DIV.

2006 SEP -8 A 10 17

CLERK L. LaVictoire
S. DIST. OF GA.

| | |
|---|---|
| YVONNE VARNADORE, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>JO ANNE B. BARNHART, )<br>Commissioner of Social Security, )<br>)<br>Defendant. ) | CIVIL ACTION NO.: CV205-078 |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff contests the decision of Administrative Law Judge Alan L. Bergstrom ("the ALJ" or "ALJ Bergstrom") denying her claim for Supplemental Security Income benefits. Plaintiff urges the Court to reverse the ALJ's decision and enter an award finding Plaintiff disabled, or, in the alternative, to remand this case for a proper determination of the evidence. Defendant asserts that the Commissioner's decision is supported by substantial evidence and should be affirmed.

Plaintiff protectively filed an application for Supplemental Security Income payments on June 30, 2000, alleging that she became disabled on June 19, 2000, due to high blood pressure, migraines, and seizures. (Tr. at 16.) After her claim was denied initially and upon reconsideration, Plaintiff filed a timely request for a hearing. On November 1, 2001, ALJ Bergstrom held a hearing at which Plaintiff appeared and testified. Plaintiff's sister and Don Harrison, a vocational expert, also testified at this hearing. ALJ Bergstrom found that Plaintiff was not disabled within the meaning of the Act. (Tr. at 594, 602.) The

AO 72A
(Rev. 8/82)

Appeals Council vacated the ALJ's decision and remanded the case so that the ALJ could obtain, *inter alia*, updated treatment records, a psychological evaluation, and school records. (Tr. at 15.) ALJ Bergstrom conducted another hearing on December 9, 2003, at which Plaintiff and her sister testified; ALJ Bergstrom conducted a third hearing on April 20, 2004, at which a vocational expert testified. ALJ Bergstrom determined that Plaintiff was not disabled within the meaning of the Act. (Tr. at 16.) The Appeals Council denied Plaintiff's request for review of the ALJ's decision, and the decision of the ALJ became the final decision of the Commissioner for judicial review. (Tr. at 3.)

Plaintiff, born on February 6, 1956, was forty-eight (48) years old when ALJ Bergstrom issued his decision. She has a ninth grade education. (Tr. at 16.) Her past relevant work experience includes employment as a elderly daycare companion. (Id.)

## ALJ'S FINDINGS

Pursuant to the Act, the Commissioner has established a five-step process to determine whether a person is disabled. 20 C.F.R. §§ 404.1520, 416.920; Bowen v. Yuckert, 482 U.S. 137, 140, 107 S. Ct. 2287, 2291, 96 L. Ed. 2d 119 (1987). The first step determines if the claimant is engaged in "substantial gainful activity." Yuckert, 482 U.S. at 140, 107 S. Ct. at 2287. If the claimant is engaged in substantial gainful activity, then benefits are immediately denied. Id. If the claimant is not engaged in such activity, then the second inquiry is whether the claimant has a medically severe impairment or combination of impairments. Yuckert, 482 U.S. at 140-141, 107 S. Ct. at 2291. If the claimant's impairment or combination of impairments is severe, then the evaluation proceeds to step three. The third step requires a determination of whether the claimant's impairment meets or equals one of the impairments listed in the Code of Federal

2

Regulations and acknowledged by the Commissioner as sufficiently severe to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(d) and 416.920(d); 20 C.F.R. Pt. 404, Subpt. P. App. 1; Phillips v. Barnhart, 357 F.3d 1232, 1238 (11th Cir. 2004). If the impairment meets or equals one of the listed impairments, the plaintiff is presumed disabled. Yuckert, 482 U.S. at 141, 107 S. Ct. at 2291. If the impairment does not meet or equal one of the listed impairments, the sequential evaluation proceeds to the fourth step to determine if the impairment precludes the claimant from performing past relevant work. Id. If the claimant is unable to perform her past relevant work, the final step of the evaluation process determines whether she is able to make adjustments to other work in the national economy, considering her age, education, and work experience. Phillips, 357 F.3d at 1239. Disability benefits will be awarded only if the claimant is unable to perform other work. Yuckert, 482 U.S. at 142, 107 S. Ct. at 2291.

In the instant case, the ALJ followed this sequential process to determine that, after the alleged onset date of June 19, 2000, there was no evidence that Plaintiff engaged in substantial gainful activity. (Tr. at 24.) At Step Two, the ALJ determined that Plaintiff had borderline intellectual functioning, major depressive disorder, anxiety, and a history of seizure disorder, which are impairments considered severe within the Act. (Id.) However, the ALJ also determined that Plaintiff's medically determinable impairments did not meet or medically equal a listed impairment. (Id.) The ALJ found that Plaintiff retained the residual functional capacity to perform a significant range of the demands of medium exertional work. ALJ Bergstrom specifically found that Plaintiff was able to lift and/or carry 50 pounds occasionally and 25 pounds frequently; stand and/or walk for the entire 8 hour workday; sit an entire workday; and engage in unlimited pushing and/or pulling. The ALJ

3

also found that Plaintiff was precluded from climbing ropes, ladders, and scaffolds over 4 feet in height; was precluded from exposure to heights or hot temperature extremes; and was frequently limited for exposure to hazardous moving machinery. ALJ Bergstrom further found that Plaintiff, due to her mental impairment, was precluded from performing jobs which require following complex or detailed instructions and completing detailed or complex tasks; frequently limited for: face-to-face contact with the general public in the workplace; telephonic contact with the general public from the workplace; work in positions of direct responsibility for other people's safety; or changes in work setting/assignment. (Tr. at 24.) At the next step, ALJ Bergstrom concluded that Plaintiff could not perform her past relevant work and that Plaintiff had no transferrable skills from any past relevant work and/or that transferability of skills was not an issue. ALJ Bergstrom noted that Plaintiff was a younger individual between the ages of 45 to 49 with a marginal education. Finally, the ALJ noted that there were a significant number of jobs in the national economy that Plaintiff could perform, such as a janitor, a worker in the assembly field, and a worker in the packing field.

## ISSUE PRESENTED

Plaintiff asserts that the ALJ erred by:

I.  Failing to find that Plaintiff's impairments did not meet or equal Listing 12.05C;

II.  Placing great weight on the opinion of the non-examining physician;

III.  Making a finding as to her residual functioning capacity which is not supported by substantial evidence; and

IV.  Failing to make proper credibility determinations.

Plaintiff also asserts that the Appeals Council erred by denying review of her case.

4

## **STANDARD OF REVIEW**

It is well-established that judicial review of social security cases is limited to questions of whether the Commissioner's factual findings are supported by "substantial evidence," and whether the Commissioner has applied appropriate legal standards. Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991); Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990). A reviewing court does not "decide facts anew, reweigh the evidence or substitute" its judgment for that of the Commissioner. Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005). Even if the evidence preponderates against the Commissioner's factual findings, the court must affirm a decision supported by substantial evidence. Id.

However, substantial evidence must do more than create a suspicion of the existence of the fact to be proved. The evidence relied upon must be relevant evidence which a reasonable mind would find adequate to support a conclusion. Walden v. Schweiker, 672 F.2d 835, 838-39 (11th Cir. 1982). The substantial evidence standard requires more than a scintilla but less than a preponderance of evidence. Dyer, 395 F.3d at 1210. In its review, the court must also determine whether the ALJ or Commissioner applied appropriate legal standards. Failure to delineate and apply the appropriate standards mandates that the findings be vacated and remanded for clarification. Cornelius, 936 F.2d at 1146.

AO 72A
(Rev. 8/82)

## DISCUSSION AND CITATION OF AUTHORITY

I. **ALJ Bergstrom's Determination that Plaintiff did not Meet or Equal Listing 12.05C is Supported by Substantial Evidence.**

Plaintiff asserts that the only reason ALJ Bergstrom gave for finding that she did not meet or equal Listing 12.05C was because there was no evidence of adaptive deficits prior to Plaintiff reaching the age of 22.

Listing 12.05C, in pertinent part, provides:

> Mental retardation: Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.
>
> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.
>
> . . . .
>
> C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05. The introductory paragraph of this Listing contains a "diagnostic description for mental retardation." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00. A claimant's impairment must satisfy this diagnostic description <u>and</u> any one of the four sets of criteria set forth in this Listing <u>before</u> a finding is reached that the impairment meets the Listing. <u>Id.</u> (Emphasis added). "[A]bsent evidence of sudden trauma that can cause retardation, the [I.Q.] tests create a rebuttable presumption of a fairly constant [I.Q.] throughout [a claimant's] life." <u>Hodges v. Barnhart</u>, 276 F.3d 1265, 1268 (11th Cir. 2001). However, a valid I.Q. score, one falling between sixty and seventy, is not conclusive of mental retardation when "the I.Q. score is inconsistent with other evidence

6

in the record on the claimant's daily activities and behavior." Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992) (citing Popp v. Heckler, 779 F.2d 1497, 1499 (11th Cir. 1986)); Hodges, 276 F.3d at 1269.

In determining that Plaintiff did not meet Listing 12.05C, ALJ Bergstrom reviewed Dr. Douglas Payne's report. (Tr. at 18-19.) ALJ Bergstrom noted that Plaintiff completed nine years of "regular" school and that she told Dr. Payne that her grades ranged from "good" to "average." (Tr. at 19.) The ALJ also reviewed Dr. Marvin Long's and Dr. Warren Hinson's records in determining that Plaintiff did not meet Listing 12.05C. (Tr. at 19-20.) Dr. Long's records indicate that Plaintiff was able to drive a car, raise her two children, and handle her own funds. (Tr. at 643.) Dr. Long's records also indicate his impression that Plaintiff exhibits a "slow learner profile" but that Plaintiff is certainly not retarded or mentally deficient. (Tr. at 643.) ALJ Bergstrom's finding that Plaintiff does not meet Listing 12.05C is supported by substantial evidence. There no evidence that Plaintiff experienced adaptive deficits prior to attaining the age of 22. In addition, Plaintiff's daily activities, as reported to Dr. Long, rebut the presumption that Plaintiff's low I.Q. means that she is "mentally retarded" as described in Listing 12.05C.

## II. ALJ Bergstrom was Entitled to Give Great Weight to the Opinion of a Non-Examining Physician.

Plaintiff contends that the ALJ erred in giving great weight to the opinion of Dr. Hinson, a state agency non-examining doctor. Plaintiff asserts that the opinions of state agency non-examining doctors do not constitute substantial evidence, nor do they justify the rejection of a treating doctor's opinion. Plaintiff also asserts that this is especially true

7

in this case because Dr. Hinson's findings were inconsistent with Plaintiff's treatment records.

The "opinion of an examining physician is generally entitled to more weight than the opinion of a non-examining physician." Broughton v. Heckler, 776 F.2d 960, 962 (11th Cir. 1985). However, [a]lthough the opinion of a claimant's examining physician is accorded substantial weight, it is not necessarily dispositive on the issue of disability." Johns v. Bowen, 821 F.2d 551, 555 (11th Cir. 1987). "[T]he report of a non-examining doctor is accorded little weight if it contradicts an examining doctor's report; such a report, standing alone, cannot constitute substantial evidence. Edwards v. Sullivan, 937 F.2d 580, 584 (11th Cir. 1991). However, if the report of the non-examining doctor is not contradictory to that of the examining doctor's, it is not error for the ALJ to rely on the non-examining doctor's report. See id. at 585.

ALJ Bergstrom relied on Dr. Hinson's opinion in light of Dr. Long's reports, and Dr. Long examined Plaintiff. ALJ Bergstrom noted that he gave "great weight" to the assessment and opinions of Drs. Long and Hinson, as they were consistent with Plaintiff's treating records from Pineland Mental Health. (Tr. at 22.) The Court notes that Dr. Hinson's assessment included his opinion that Plaintiff was "Not Significantly Limited" in her *ability* for social interaction. (Tr. at 689.) This does not indicate that Dr. Hinson's report contradicts Plaintiff's treatment records from Pineland Mental Health, in particular the entries noting Plaintiff's *desire* not to be around other people. (Tr. at 667-68 and 694.) ALJ Bergstrom's decision to give Dr. Hinson's opinion great weight is supported by substantial evidence. Dr. Hinson's opinion did not contradict any other records and was supported by Dr. Long's reports.

### III. The ALJ's Determination as to Plaintiff's Residual Functioning Capacity is Supported by Substantial Evidence.

Plaintiff avers that the ALJ failed to evaluate her Level II obesity, and, in fact, failed to mention Plaintiff's weight at all in his decision. Plaintiff contends that ALJ Bergstrom did not address any of the evidence in the record that she had problems with her right knee. Plaintiff also contends that the ALJ failed to note Dr. Dickens' finding that she could not work eight (8) hours a month, let alone in a day. Finally, Plaintiff contends that ALJ Bergstrom did not consider her neuropathy, as he stated there was no objective medical evidence that Plaintiff had problems in her lower extremities. Plaintiff appears to contend that her obesity exacerbated other problems she contends she had.

At step three, the ALJ considers the "medical severity" of those impairments determined to be severe in order to determine if these impairments meet or equal one of the listed disabilities. 20 C.F.R. § 404.1520(a)(4)(iii); Phillips v. Barnhart, 357 F.3d 1232, 1238 (11th Cir. 2004). The "Listings" are a voluminous list of specific impairments determined to be sufficiently severe to preclude any gainful activity. Id. If the ALJ determines that a claimant's impairments meet or equal one of the listed disabilities and the durational requirement, it is conclusively determined that the claimant's medical conditions have rendered him disabled. Id.; Crayton v. Callahan, 120 F. 3d 1217, 1219 (11th Cir. 1997).

There is no specific listing for obesity. Obesity can, however, be a factor in determining whether a claimant's impairments "meet" or "equal" a listing. Obesity can meet the requirements of a listing if the claimant has another impairment that by itself meets the requirements of a listing. Also, a listing will be met when there is an impairment that can

9

be evaluated in conjunction with obesity to meet the requirements of a listing. Obesity, by itself, can be sufficient to be medically equivalent to a listing. For instance, obesity can be debilitating enough to equal a listing when the claimant is unable to ambulate effectively. Obesity can also be equivalent to a listing when the claimant has multiple impairments, including obesity, and no one impairment meets or equals a listing; however, the combination of the impairments is sufficient to equal the severity of a listing. Social Security Ruling 02-01p.

ALJ Bergstrom did not err in failing to consider Plaintiff's claim of obesity in determining that Plaintiff is not disabled within the meaning of the Act. While there are several mentions in the record of Plaintiff's obesity (e.g., Tr. at 493 and 532), there is no evidence that Plaintiff's obesity affected her abilities to walk or to otherwise function on a daily basis. See Social Security Ruling 02-01p. Nor are there any findings as to what effect, if any, Plaintiff's obesity had on her other conditions.

In addition, ALJ Bergstrom did not err in failing to evaluate Plaintiff's alleged problems with her right knee. Though Dr. William Hornback, III, noted that Plaintiff had an extension lag between five and ten degrees, this does not necessarily mean that Plaintiff's knee surgery caused her any limitations. (Tr. at 312.) In fact, the medical record directly following Dr. Hornback's letter states that Plaintiff moved her extremities equally well, she had "no noticeable weaknesses on the exam on the right side", and her ambulation was symmetrical. (Tr. at 313.) Plaintiff has pointed to her psychiatrist's note that she "had knee surgery 2 ½ months ago, now needing foot surgery." (Pl.'s Br., p. 21.) This notation, which appears at page 658 of the Transcript, appears to relay *Plaintiff's* report, not her doctor's finding, on the issue.

Moreover, despite Plaintiff's contention that Dr. Catherine Dickens found that Plaintiff could not perform her work, the record does not support Plaintiff's contention. The Court assumes Dr. Dickens' handwriting appears at the bottom of Plaintiff's records from her. On page 554, Plaintiff complained that she must work eight (8) hours a month to stay in her apartment but that she was not allowed to work due to her medication; at the bottom of this page is written "Can she work at hospital or nursing home where she will be safe on med?". (Tr. at 554.) Dr. Dickens also agreed to write Plaintiff a note for the last four (4) days of the month that she could not work the rest of the month with community service; it appears this is because Plaintiff changed her medication, which resulted in Plaintiff suffering from side effects. (Tr. at 558.) Finally, Dr. Dickens wrote Plaintiff another excuse from working community service in June 2001. (Tr. at 562.) However, there is no evidence that Dr. Dickens opined or found that Plaintiff lacked the ability to work. ALJ Bergstrom did not err in failing to consider this evidence. In fact, the ALJ noted that Dr. Dickens would not give Plaintiff a note on one occasion because her seizures were under good control and the weather was good. (Tr. at 18.)

Finally, while the record indicates in two pages that Plaintiff suffered from peripheral neuropathy (Tr. at 405 and 421), a medical record dated a short time later does not indicate Plaintiff suffered from neuropathy. (Tr. at 493.) The ALJ's finding that Plaintiff's allegations of lower extremity problems was not severe because there was no objective medical evidence to support these allegations is supported by substantial evidence.

ALJ Bergstrom did not err in failing to consider Plaintiff's obesity or what effect her obesity may have had on her other conditions.

AO 72A
(Rev. 8/82)

IV.     **The ALJ's Credibility Determinations are Supported by Substantial Evidence.**

Plaintiff alleges that, in finding Plaintiff "not totally credible", the ALJ failed to consider her obesity, right knee problems, neuropathy, and the limitations imposed by Dr. Dickens. Plaintiff also alleges that ALJ Bergstrom erred in stating that she was not on any pain medication. Plaintiff asserts that ALJ Bergstrom ignored her psychiatrist's warning that her memory problems could be caused by the effects of certain medications. Plaintiff contends that ALJ Bergstrom also used Plaintiff's lapses in taking her medications as a reason to discount her symptoms. Plaintiff also contends that, because the ALJ failed to make a credibility finding for Plaintiff's sister, his decision should be reversed.

If a plaintiff "testifies as to [her] subjective complaints of disabling pain and other symptoms, . . . the ALJ must clearly 'articulate explicit and adequate reasons' for discrediting the claimant's allegations of completely disabling symptoms." Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting Foote v. Chater, 67 F.3d 1553, 1561-62 (11th Cir.1995)). "Although this circuit does not require an explicit finding as to credibility, the implication must be obvious to the reviewing court." Id. (internal citation omitted). An ALJ's credibility determination need not "cite 'particular phrases or formulations'[,] but it cannot merely be a broad rejection which is 'not enough to enable [a reviewing court] to conclude that [the ALJ] considered [a plaintiff's] medical condition as a whole.'" Id. at 1210-11 (quoting Foote, 67 F.3d at 1561).

The ALJ found that Plaintiff's allegations were not totally credible and were not consistent with the evidence of record. (Tr. at 21.) In making this determination, ALJ Bergstrom stated that there was no medical basis for many of Plaintiff's complaints regarding diabetes mellitus, fibromyalgia, or recurrent pain. ALJ Bergstrom also noted that

12

Plaintiff was not on any pain medication at that time and that Plaintiff's claims of psychological and seizure limits were excessive and inconsistent with treating physician reports, consultative examination findings, and medical expert assessments. (Id.) ALJ Bergstrom further noted that, when Plaintiff took her medication, she did well. (Tr. at 17.) It appears that the ALJ based his finding that Plaintiff was not entirely credible on the record before him, which detailed Plaintiff's medical conditions. ALJ Bergstrom's determination is supported by substantial evidence. Additionally, ALJ Bergstrom need not have made an express credibility determination for Plaintiff's sister, as she offered no evidence of the effect of Plaintiff's alleged impairments on her ability to work. (Tr. at 778-83.); see 20 C.F.R. § 416.913(d)(4) (noting that the Commissioner *may* consider evidence from other sources, such as a family member, to show the severity of a person's impairment(s) and how it affects her ability to work).

V.    **Plaintiff's Assertion That the Appeals Council Erred in Denying Review of her Case.**

Finally, Plaintiff maintains that the Appeals Council should have granted her request for review of her case. Plaintiff avers that the evidence submitted to the Appeals Council indicated that she needed more surgery on her right knee and that she was to use crutches and not bear weight on her knee until she went back to the doctor. Plaintiff contends that this evidence is inconsistent with ALJ Bergstrom's findings that she had no severe impairment of her lower extremities and on her residual functioning capacity.

'[W]hen the [Appeals Council] has denied review, . . . only . . . the evidence actually presented to the ALJ" will be used "in determining whether the ALJ's decision is supported by substantial evidence." Falge v. Apfel, 150 F.3d 1320, 1323 (11th Cir. 1998). Based on

13

the undersigned's reading of <u>Falge</u>, there is no need to consider the additional evidence presented to the Appeals Council. Although the Appeals Council "considered the additional evidence" Plaintiff presented, the Appeals Council denied Plaintiff's request for review of her case. (Tr. at 3.) This means that the ALJ's decision is the final decision of the Commissioner for judicial review. <u>Falge</u>, 150 F.3d at 1323. Plaintiff's allegations under this enumeration of error are no more than asserting that ALJ Bergstrom's decision that she is not disabled is not supported by substantial evidence; as detailed above, this is not the case.

In sum, the ALJ's decision that Plaintiff is not disabled within the meaning of the Act is supported by substantial evidence. Much of Plaintiff's contentions before this Court appear to be an attempt to have this Court re-weigh the evidence, and this is not an appropriate position for the Court in Social Security cases. See <u>Dyer</u>, 395 F.3d at 1210.

## CONCLUSION

Based on the foregoing, it is my **RECOMMENDATION** that the decision of the Commissioner be **AFFIRMED**.

**SO REPORTED** and **RECOMMENDED**, this ____8th____ day of September, 2006.

JAMES E. GRAHAM
UNITED STATES MAGISTRATE JUDGE

14

AO 72A
(Rev. 8/82)